UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

MARKCUS C.[1],            Case No. 2:22-cv-1917
    Plaintiff,                 Morrison, J.
                                    Litkovitz, M.J.
    vs.

COMMISSIONER OF             **REPORT AND**
SOCIAL SECURITY,              **RECOMMENDATION**
    Defendant.

       Plaintiff Markcus C. brings this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) for judicial review of the final decision of the Commissioner of Social Security (Commissioner) denying plaintiff's applications for disability insurance benefits (DIB) and supplemental security income (SSI). This matter is before the Court for disposition based on plaintiff's statement of errors (Doc. 12), the Commissioner's response in opposition (Doc. 15), and plaintiff's reply memorandum (Doc. 17).

**I. Procedural Background**

       Plaintiff protectively filed his applications for DIB and SSI in February 2019, alleging disability since November 2, 2017, due to hypertension, obesity, depression, anxiety, post-traumatic stress disorder (PTSD), and an alcohol use disorder. His applications were denied initially and upon reconsideration. Plaintiff, through counsel, requested and was granted a *de novo* hearing before administrative law judge (ALJ) Donna J. Grit. Plaintiff and a vocational expert (VE) appeared telephonically and testified at the ALJ hearing on December 16, 2020. On February 23, 2021, the ALJ issued a decision denying plaintiff's DIB and SSI applications. This

---

[1] Pursuant to General Order 22-01, due to significant privacy concerns in social security cases, any opinion, order, judgment or other disposition in social security cases in the Southern District of Ohio shall refer to plaintiffs only by their first names and last initials.

decision became the final decision of the Commissioner when the Appeals Council denied review on February 9, 2022.

## II. Analysis

### A. Legal Framework for Disability Determinations

To qualify for disability benefits, a claimant must suffer from a medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than 12 months. 42 U.S.C. §§ 423(d)(1)(A) (DIB) and 1382c(a)(3)(A) (SSI). The impairment must render the claimant unable to engage in the work previously performed or in any other substantial gainful employment that exists in the national economy. 42 U.S.C. §§ 423(d)(2) and 1382c(a)(3)(B).[2]

Regulations promulgated by the Commissioner establish a five-step sequential evaluation process for disability determinations:

> 1) If the claimant is doing substantial gainful activity, the claimant is not disabled.
>
> 2) If the claimant does not have a severe medically determinable physical or mental impairment – *i.e.*, an impairment that significantly limits his or her physical or mental ability to do basic work activities – the claimant is not disabled.
>
> 3) If the claimant has a severe impairment(s) that meets or equals one of the listings in Appendix 1 to Subpart P of the regulations and meets the duration requirement, the claimant is disabled.
>
> 4) If the claimant's impairment does not prevent him or her from doing his or her past relevant work, the claimant is not disabled.

---

[2] "The Commissioner's regulations governing the evaluation of disability for DIB and SSI are identical." *Miller v. Comm'r of Soc. Sec.*, No. 3:18-cv-281, 2019 WL 4253867, at *1 n. 1 (S.D. Ohio Sept. 9, 2019) (quoting *Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007)). For claims filed on or after March 27, 2017, these regulations are found at 20 C.F.R. § 404.1520c and 20 C.F.R. § 416.920c, respectively. The Court's references to DIB regulations should be read to incorporate the corresponding and identical SSI regulations, and vice versa, for purposes of this Report and Recommendation.

> 5) If the claimant can make an adjustment to other work, the claimant is not disabled. If the claimant cannot make an adjustment to other work, the claimant is disabled.

*Rabbers v. Comm'r of Soc. Sec.,* 582 F.3d 647, 652 (6th Cir. 2009) (citing 20 C.F.R. §§ 404.1520(a)(4)(i)-(v) and 404.1520(b)-(g)). The claimant has the burden of proof at the first four steps of the sequential evaluation process. *Id.; Wilson v. Comm'r of Soc. Sec.,* 378 F.3d 541, 548 (6th Cir. 2004). Once the claimant establishes a prima facie case by demonstrating an inability to perform the relevant previous employment, the burden shifts to the Commissioner to show that the claimant can perform other substantial gainful employment and that such employment exists in the national economy. *Rabbers,* 582 F.3d at 652; *Harmon v. Apfel,* 168 F.3d 289, 291 (6th Cir. 1999).

### B. The Administrative Law Judge's Findings

The ALJ applied the sequential evaluation process and made the following findings of fact and conclusions of law:

1. [Plaintiff] meets the insured status requirements of the Social Security Act through December 31, 2022.

2. [Plaintiff] has not engaged in substantial gainful activity since November 2, 2017, the alleged onset date (20 CFR 404.1571 *et seq.*, and 416.971 *et seq.*).

3. [Plaintiff] has the following severe impairments: hypertension; obesity; depression; anxiety; post-traumatic stress disorder (PTSD); and an alcohol use disorder (20 CFR 404.1520(c) and 416.920(c)).

4. [Plaintiff] does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

5. After careful consideration of the entire record, the [ALJ] find[s] that the [plaintiff] has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except: never climbing ladders, ropes, and scaffolds and no work at unprotected heights; no work on conveyored assembly lines; able to understand, remember, and apply information to perform simple

     tasks, make simple decisions, focus on, persistent [sic], and complete simple tasks timely, adapt to occasional changes in workplace routines; and limited to only occasional interaction with the public and coworkers.

6. [Plaintiff] is unable to perform any past relevant work (20 CFR 404.1565 and 416.965).[3]

7. [Plaintiff] was born [in] … 1981 and was 36 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date (20 CFR 404.1563 and 416.963).

8. [Plaintiff] has a limited education (20 CFR 404.1564 and 416.964).

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the [plaintiff] is "not disabled," whether or not the [plaintiff] has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10. Considering the [plaintiff]'s age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the [plaintiff] can perform (20 CFR 404.1569, 404.1569(a), 416.969, and 416.969(a)).[4]

11. [Plaintiff] has not been under a disability, as defined in the Social Security Act, from November 2, 2017, through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).

(Tr. 17-34).

    **C. Judicial Standard of Review**

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g) and involves a twofold inquiry: (1) whether the findings of the ALJ are supported by substantial evidence, and (2) whether the ALJ applied the correct legal standards. *See Blakley v.*

---

[3] Plaintiff's past relevant work was as a van driver, a merchandise deliverer, and a light truck driver (all medium, semiskilled or unskilled work performed at up to a very heavy level of exertion). (Tr. 32).

[4] The ALJ relied on the VE's testimony to find that plaintiff would be able to perform the requirements of representative occupations requiring light exertional work with additional physical and mental limitations, such as housekeeping cleaner (300,000 jobs nationally) and production inspector (128,000 jobs nationally). (Tr. 33-34).

*Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009); *see also Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 745-46 (6th Cir. 2007).

The Commissioner's findings must stand if they are supported by "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, ___ U.S. ___, 139 S. Ct. 1148, 1154 (2019) (citing *Consolidated Edison Co. v. N.L.R.B.*, 305 U.S. 197, 229 (1938)). Substantial evidence consists of "more than a scintilla of evidence but less than a preponderance. . . ." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007). In deciding whether the Commissioner's findings are supported by substantial evidence, the Court considers the record as a whole. *Hephner v. Mathews*, 574 F.2d 359 (6th Cir. 1978).

The Court must also determine whether the ALJ applied the correct legal standards in the disability determination. Even if substantial evidence supports the ALJ's conclusion that the plaintiff is not disabled, "a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right." *Rabbers,* 582 F.3d at 651 (quoting *Bowen,* 478 F.3d at 746). *See also Wilson*, 378 F.3d at 545-46 (reversal required even though ALJ's decision was otherwise supported by substantial evidence where ALJ failed to give good reasons for not giving weight to treating physician's opinion, thereby violating the agency's own regulations).

D. **Relevant Medical Opinions**

On August 14, 2019, state agency psychological consultant Jaime Lai, Psy.D., assessed plaintiff as "moderately limited" in his ability to maintain attention and concentration for extended periods, ability to respond appropriately to changes in the work setting, ability to complete a normal workday and workweek without interruptions from psychologically based symptoms, and ability to interact appropriately with the general public. (Tr. 93-94, 106-07). Dr.

Lai opined that plaintiff is "capable of performing simple and multi-step tasks in a setting without strict time and production demands" and "capable of brief superficial interactions with the general public, coworkers, and supervisors." (Tr. 93, 107). Dr. Lai assessed plaintiff as not significantly limited in other psychological categories. (Tr. 93-94, 106-07). Upon reconsideration in September 2019, state agency psychological consultant Sandra Banks, Ph.D, affirmed Dr. Lai's assessment. (Tr. 122-23, 135-36).

      E.      **Specific Errors**

On appeal, plaintiff contends the ALJ failed to properly account for the limitations provided by the state agency psychologists at both levels. Specifically, plaintiff argues that the ALJ erred by not including a superficial interactions limitation in her residual functional capacity (RFC) determination, as indicated by the state agency reviewing psychologists. (Doc. 12 at PAGEID 1376-80). The Commissioner counters that the ALJ properly supported her determination that plaintiff did not require a superficial interactions limitation with substantial evidence, including plaintiff's mental status examination findings, ability to interact with healthcare providers, activities, symptoms, and improvement with treatment. (Doc. 15 at PAGEID 1395-1402).

      F.      **The ALJ's RFC Finding is Not Supported by Substantial Evidence.**

Plaintiff contends the ALJ's evaluation of the state agency psychologists' opinions is not supported by substantial evidence. Plaintiff argues that Drs. Lai and Banks opined that plaintiff was "capable of brief superficial interactions with the general public, coworkers, and supervisors" (Tr. 93, 135), but the ALJ improperly failed to incorporate this restriction into the RFC or adequately explain why she elected not to do so. (Doc. 12 at PAGEID 1376-80).

6

The ALJ is charged with the final responsibility in determining a claimant's RFC. *See* 20 C.F.R. § 416.927(d)(2) (the final responsibility for deciding the RFC is "reserved to the Commissioner."). The ALJ is responsible for assessing a claimant's RFC based on all of the relevant medical and other evidence. 20 C.F.R. § 416.945(a)(3). *See also Moore v. Astrue*, No. 07-204, 2008 WL 2051019, at *5 (E.D. Ky. May 12, 2008) ("[T]he ALJ is responsible for assessing a claimant's [RFC] by examining all the evidence in the record.") (citing 20 C.F.R. §§ 404.1545(a)(3), 404.1546(c)); *Bingaman v. Comm'r of Soc. Sec.*, 186 F. App'x 642, 647 (6th Cir. 2006)).

Plaintiff refers to Social Security Ruling (SSR) 96-8p,[5] which concerns the agency's assessment of RFC. *See* SSR 96-8p, 1996 WL 374184. In particular, plaintiff references the following:

> In assessing RFC, the adjudicator must discuss the individual's ability to perform sustained work activities in an ordinary work setting on a regular and continuing basis (i.e., 8 hours a day, for 5 days a week, or an equivalent work schedule), and describe the maximum amount of each work-related activity the individual can perform based on the evidence available in the case record. The adjudicator must also explain how any material inconsistencies or ambiguities in the evidence in the case record were considered and resolved.

*Id.* at *7 (footnote omitted).

In this case, the ALJ found that plaintiff retained the RFC to perform light work with additional postural and environmental limitation and that, mentally, he is able to "understand, remember, and apply information to perform simple tasks, make simple decisions, focus on, persist[ ], and complete simple tasks timely, adapt to occasional changes in workplace routines;

---

[5] "Social Security Rulings do not have the force and effect of law, but are 'binding on all components of the Social Security Administration' and represent 'precedent final opinions and orders and statements of policy and interpretations' adopted by the Commissioner." *Ferguson v. Comm'r of Soc. Sec.*, 628 F.3d 269, 272 n. l (6th Cir. 2010) (quoting 20 C.F.R. § 402.35(b)(1)). The Sixth Circuit has refrained from ruling on whether Social Security Rulings are binding on the Commissioner in the same way as Social Security Regulations but has assumed that they are. *Id.* (citing *Wilson*, 378 F.3d at 549).

7

and [is] limited to only occasional interaction with the public and coworkers." (Tr. 23). In making this RFC finding, the ALJ recognized that plaintiff "has some limitations from depression, anxiety, and PTSD; however, the objective medical evidence of record does not support the extent of the claimant's alleged limitations." (Tr. 24).

The ALJ found the opinions of Drs. Lai and Banks only "somewhat persuasive." (Tr. 31). In determining the persuasiveness of a medical opinion, an ALJ must consider five factors: (1) supportability, (2) consistency, (3) relationship with the claimant, including length of treatment relationship, frequency of examinations, purpose of the treatment relationship, and examining relationship, (4) specialization, and (5) other factors that tend to support or contradict a medical opinion. 20 C.F.R. § 404.1520c(c)(1)-(5). The most important factors the ALJ must consider are supportability and consistency. 20 C.F.R. § 404.1520c(b)(2). With respect to the supportability factor, "[t]he more relevant the objective medical evidence[6] and supporting explanations presented by a medical source are to support his or her medical opinion(s) . . . the more persuasive the medical opinions . . . will be." 20 C.F.R. § 404.1520c(c)(1). Similarly, "[t]he more consistent a medical opinion(s) . . . is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s). . . ." 20 C.F.R. § 404.1520c(c)(2). The ALJ is required to "*explain* how [he/she] considered the supportability and consistency factors for a medical source's medical opinions" in the written decision. 20 C.F.R. § 404.1520c(b)(2) (emphasis added).

While noting that Drs. Lai and Banks possess "program knowledge and experience evaluating impairments pursuant to the Social Security Act, as well as specialized training and experience in the field of psychology," the ALJ concluded that their opinions were only

---

[6] Objective medical evidence is defined as "signs, laboratory findings, or both." 82 Fed. Reg. 5844-01, 2017 WL 168819, at *5850.

8

"somewhat consistent with the medical evidence of record." (Tr. 30). In addition, the ALJ concluded that the assessments of Drs. Lai and Banks "contain vague limitations."[7] (Tr. 31). Rather than limiting plaintiff to "brief superficial interactions with the general public, coworkers, and supervisors" as Drs. Lai and Banks opined (Tr. 93, 135), the ALJ limited plaintiff to "only occasional interaction with the public and coworkers." (Tr. 32).

As an initial matter, the Court rejects the ALJ's conclusion that Drs. Lai and Banks included "vague limitations" in their assessments. "Courts routinely recognize that limiting the *quantity* of time spent with an individual does not accommodate a limitation relating to the *quality* of the interactions—including a limitation to 'superficial' interaction." *Garvin v. Comm'r of Soc. Sec.*, No. 2:20-cv-2566, 2021 WL 2200423, at *6 (S.D. Ohio June 1, 2021). "'[S]uperficial interaction' is a well-recognized, work-related limitation." *Id.* (quoting *Hutton v. Comm'r of Soc. Sec.*, No. 2:20-CV-339, 2020 WL 3866855, at *5 (S.D. Ohio July 9, 2020), *report and recommendation adopted sub nom. Hutton v. Comm'r of Soc. Sec. Admin.*, No. 2:20-CV-339, 2020 WL 4334920 (S.D. Ohio July 28, 2020)). Similarly, both ALJs and reviewing courts have found no ambiguity in terms such as "strict time and production demands." *See Hardy v. Comm'r of Soc. Sec.*, No. 2:20-cv-4097, 2021 WL 3284743, at *4 (S.D. Ohio Aug. 2, 2021) (adopting doctor's opinion "regarding strict pace and production requirements"); *see also Crum v. Comm'r of Soc. Sec.*, 660 F. App'x 449, 453 (6th Cir. 2016) ("Work activity cannot include strict time or production demands.").

The question here, then, is whether the ALJ offered an adequate explanation, supported by substantial evidence, for declining to include the "superficial interactions" limitation assessed by Drs. Lai and Banks in plaintiff's RFC. *See* 20 C.F.R. § 404.1520c(b)(2). "Although the new

---

[7] In this regard, the ALJ cited to the limitations of "no strict time and production demands" and "superficial interaction[s]." (Tr. 31).

9

[regulatory] standards are less stringent in their requirements for the treatment of medical opinions, they still require that the ALJ provide a coherent explanation of his reasoning." *White v. Comm'r of Soc. Sec.*, No. 1:20-cv-588, 2021 WL 858662, at *21 (N.D. Ohio Mar. 8, 2021). As this Court recently explained:

> The new regulations "set forth a 'minimum level of articulation' to be provided in determinations and decisions, in order to 'provide sufficient rationale for a reviewing adjudicator or court.'" *Warren I. v. Comm'r of Soc. Sec.*, No. 20-495, 2021 WL 860506, at *8 (N.D.N.Y. Mar. 8, 2021) (quoting 82 Fed. Reg. 5844-01 (2017)). An "ALJ's failure . . . to meet these minimum levels of articulation frustrates [the] court's ability to determine whether [claimant's] disability determination was supported by substantial evidence." *Vaughn v. Comm'r of Soc. Sec.*, No. 20-1119, 2021 WL 3056108, at *11 (W.D. Tenn. July 20, 2021).

*Butcher v. Comm'r of Soc. Sec.*, No. 2:20-cv-6081, 2021 WL 6033683, at *4 (S.D. Ohio Dec. 21, 2021) (citation omitted), *report and recommendation adopted sub nom. Christina B. v. Comm'r of Soc. Sec.*, 2022 WL 523519 (S.D. Ohio Feb. 22, 2022) (Morrison, J.).

In this case, the ALJ discounted the psychological assessments of Drs. Lai and Banks because they "did not have the opportunity to examine [plaintiff], to review the medical evidence of record in its entirety, or to listen to [plaintiff's] testimony." (Tr. 31). The ALJ determined that the "medical evidence of record does not support restrictions of no strict time and production demands, nor does it justify limiting [plaintiff] to superficial interaction." (Tr. 31). In support of this conclusion, the ALJ states that plaintiff "often presented with unremarkable findings related to cognition, memory, orientation, thought processes, with normal moods and affects observed during multiple evaluations (*See, e.g.,* Ex. 2F/18; 3F/4-8; 5F/1-10; 9F/8-11; and 10F/2-4, 21)." (Tr. 31).

With the exception of a single record, exhibit 9F/8, the records cited by the ALJ do not accurately support her conclusion. The ALJ cited exhibit 2F/18 (Tr. 404), part of plaintiff's April-May 2018 discharge record following an eight-day inpatient hospital stay where he sought

10

emergency treatment for repeated panic attacks. (Tr. 403-404). Rather than indicating "normal moods and affects" as the ALJ stated, exhibit 2F/18 reports his mental status evaluation as "Mood/Affect: Anxious, Depressed" with "Preoccupations" of both "External stressors" and "Internal stressors." (Tr. 404). Indeed, the prior page of the same document states:

> On assessment [plaintiff] was found in bed resting, he was oriented, with constricted affect, fair eye contacted (sic) and appropriate engagement. . . . The patient endorses frequent panic, with heart palpitations, shortness of breath, racing thoughts, dread, and feeling he is dying. The patient reported daily anxiety and constant worry about everything and everyone in his life, he reported depressive symptoms that include: thoughts of death, times of hopelessness, feelings of worthlessness, crying, diminished motivation, and energy, difficulty with concentration, decreased appetite, anhedonia and decreased ADLs. The patient is not leaving his house, and is having difficulty doing basic day to day tasks like driving.

(Tr. 403).

The ALJ also cited exhibit 3F/4-8 (Tr. 437-441), psychiatric progress notes from North Community Counseling. These notes indicate mixed findings. The note from June 14, 2018 indicates "improvement in mood on the increased dose of Zoloft" with good memory, insight, and judgment. (Tr. 437). However, the note one month later, from July 19, 2018, reports "anxious" mood and reactive affect with "2 panic attacks since his last appointment." (Tr. 441).

The ALJ cited exhibit 5F/1-10 (Tr. 510-519), additional psychiatric progress notes from North Community Counseling. These notes, too, report an "anxious" mood and reactive affect on mental status examination with "panic attacks" and "hallucinations at night when asleep." (Tr. 510, 514). The October 9, 2018 mental status examination indicates "cooperative" behavior with "linear and logical" thought processes but "anxious" mood and reactive affect as well as "continues to have panic attacks daily." (Tr. 519). Contrary to the ALJ's decision, these notes do not reflect "normal" findings.

11

The ALJ additionally cited exhibit 10F/2-4, 21 (Tr. 583-585, 602), records from The Ohio State University Wexner Medical Center, Psychiatric Emergency Services. Plaintiff presented on November 14, 2017 with "a panic attack today while driving started to hyperventilate so he pulled off the side [of the] road and it got worse so he called 911." (Tr. 583). He was transported by ambulance to the hospital and admitted for three days. On admission, plaintiff was "alert and fully oriented" and "pleasant and cooperative," but with "worsening anxiety and depression." (*Id.*). His mental status examination revealed "logical and linear" thought with "anxious and depressed" mood and "consistent" affect. (Tr. 585). On discharge, plaintiff's mood was assessed as "OK" with an "appropriate" affect. (Tr. 602).

Lastly, the ALJ cited exhibit 9F/8 (Tr. 544), treatment records from Holyhills Healthcare Services, Home Visit Department. (Tr. 537-576). During a physical examination on July 23, 2020, plaintiff exhibited "normal mood and affect and active and alert." (Tr. 542, 544). However, the following month, he presented as "active and alert and anxious." (Tr. 547).

The records cited by the ALJ (Tr. 31, citing Ex. 2F/18; 3F/4-8; 5F/1-10; 9F/8-11; and 10F/2-4, 21), do not substantially support her conclusion of "unremarkable findings" and "normal moods and affects." Moreover, with the exception of exhibit 9F, Drs. Lai and Banks reviewed these same records cited by the ALJ and, based on their expertise in psychology, concluded that plaintiff can engage only in superficial interactions. The Court is unable to discern the basis for the ALJ's conclusion when the records she cited, with a single exception, do not reflect "unremarkable findings" and "normal moods and affects."

In addition, the ALJ noted that the medical evidence "does not document an inability to communicate or interact with healthcare providers." (Tr. 31). However, she fails to explain how an ability to interact with individual healthcare providers during mental health crises and

12

treatment contradicts the opinions of Drs. Lai and Banks that plaintiff can engage in only superficial interaction with coworkers, supervisors, and the general public.

The Commissioner argues that other sections of the ALJ's decision discuss plaintiff's improvement with treatment and activities of daily living thereby supporting the ALJ's decision not to include the superficial interactions limitation. (Doc. 15 at PAGEID 1396-1402). However, the ALJ cites to very specific sections of the medical record without explaining how she resolved discrepancies between the sections cited and related or adjacent contradictory records.

For example, in concluding that plaintiff's mental health had improved with treatment, the ALJ primarily relied on records from North Community Counseling (Ex. 3F, Tr. 434-497) and (Ex. 5F, Tr. 510-523). (Tr. 27). While plaintiff did report in June 2018 that the "increased dose of Zoloft" was "working well for him," (Tr. 437), he reported the following month, in July 2018, that he experienced two major panic attacks in the last four weeks, encountered increased arguments with the person with whom he lives, and "continues to report that 'I'm dead or in purgatory.'" (Tr. 441). Plaintiff's psychiatrist changed his medications again at this July 2018 appointment. (Tr. 443). In August 2018, plaintiff reported that "he isn't doing too well," "is now afraid his life is in danger," had two major panic attacks in the last month, and suffers from hallucinations at night. (Tr. 446). His September 2018 outpatient treatment notes state that "[h]e continues to have panic attacks daily and wants a medication to keep him from having them again." (Tr. 450). While the ALJ cited plaintiff's January 2019 report that his medications were helpful (Tr. 27, citing Tr. 493), she ignored the statement in the same paragraph that he "utilizes staying in his room and distractions to cope." (*Id.*).

13

In reviewing his activities of daily living, the ALJ noted that plaintiff had poor hygiene, deterioration of household chores, difficulty leaving home and driving, and relied on his family to help him keep up with personal needs and eating. (Tr. 29). However, the ALJ concluded that "it is difficult to attribute that degree of limitation to [plaintiff's] medical condition, as opposed to other reasons" and "at times, [plaintiff] described activities that support a higher level of functioning than he generally alleged." (Tr. 30). The ALJ does not specify the "other reasons" to which his limitations could be attributed nor how a higher level of functioning "at times" would enable plaintiff to perform sustained work activities without a superficial interactions limitation.

The ALJ also fails to explain how she resolved conflicts between the records cited in support of increased activities of daily living and adjacent contradictory records. For example, the ALJ cited to plaintiff's April 2018 Florida vacation with his family (Tr. 30, citing Ex. 2F/19, Tr. 405) and stated, "Although a vacation and disability are not necessarily mutually exclusive, the claimant's decision to go on a vacation tends to suggest that the alleged symptoms and limitations may have been overstated." (Tr. 30). The ALJ, however, omits the context under which the report of plaintiff's visit to Florida arose. Hospital records show that plaintiff sought emergency psychiatric treatment on April 23, 2018 for panic attacks and suicidal ideation. (Tr. 387). During a risk assessment for suicidal ideation, plaintiff reported "thoughts of cutting himself; jumping from 4th floor hotel room while in Florida with family last week." (Ex. 2F/19, Tr. 405). After evaluation, plaintiff was admitted "to [the hospital] inpatient psych for aggressive psychiatric care" and remained hospitalized for eight days. (Tr. 393). The ALJ also cited plaintiff's statement to North Community Counseling that he "is scheduled to work for Urban League to earn cash benefits" (Tr. 30, citing Tr. 481), but fails to note the next sentence

14

that plaintiff "states 'I will never work for another person again.'" (Tr. 481). Similarly, the ALJ accurately noted that plaintiff reported that he played video games and listened to music in September 2018 (Tr. 483), could shop online (Tr. 283), could watch movies and play games on his phone (Tr. 284), could interact with a "friend" on Facebook (Tr. 284), and could help dry his children after a shower (Tr. 281). (Tr. 30). However, the ALJ failed to explain how activities that do not require plaintiff to leave his home or engage with people on more than a superficial basis are inconsistent with the conclusions reached by Drs. Lai and Banks. In addition, those same records also include reports that plaintiff is "constantly scared when I leave the house" (Tr. 280), "tr[ies] to shower, make coffee and stay in [his] room [for the] rest of the day" (Tr. 281), has a "complicated sleep schedule" because of anxiety and panic attacks (Tr. 281), is unable to make food because of the "triggers" in his kitchen (Tr. 282), and can only leave his home if it is not raining (Tr. 283). He reported that he could clean his room (Tr. 30, citing Tr. 282) only because it "[i]s safe here." (Tr. 282).

In sum, the ALJ did not fairly characterize the records that she referenced in support of her conclusion that the opinions of Drs. Lai and Banks were only "somewhat consistent with the medical evidence of record." (Tr. 30). The ALJ failed to explain how those medical records or plaintiff's daily activities detracted from the state agency psychological consultants' assessments. In addition, the ALJ failed to explain how she evaluated the cited records and conflicting, related records. While the distinction between "cherry-picking" and weighing evidence can be a fine one, the Court's review of the records referenced by the ALJ leaves it convinced that the former occurred in this case. *Cf. Coppage v. Berryhill*, No. 1:16-cv-144, 2017 WL 8640926, at *4 (W.D. Ky. Aug. 11, 2017) ("[A]n ALJ has a duty not to cherry-pick facts from the record to support a finding of not disabled where a finding of disabled would otherwise

15

be appropriate. . . . However, an ALJ does not cherry-pick the record simply by resolving discrepancies in the record against the claimant.") (citing *Smith v. Comm'r of Soc. Sec.*, No. 1:11-cv-2013, 2013 WL 943874, at *6 (N.D. Ohio, March. 11, 2013)), *report and recommendation adopted*, 2018 WL 305336 (W.D. Ky. Jan. 5, 2018). Absent additional information and clarification, the Court is unable to conclude the ALJ's evaluation of Drs. Lai and Banks' opinions and the omission of the "superficial interactions" limitation in plaintiff's RFC are supported by substantial evidence.

**IT IS THEREFORE RECOMMENDED THAT** plaintiff's Statement of Errors (Doc. 12) be **SUSTAINED**, and the decision of the Commissioner be **REVERSED** and **REMANDED** for further proceedings pursuant to Sentence Four of 42 U.S.C. § 405(g).

*/s/ Karen L. Litkovitz*
Karen L. Litkovitz
United States Magistrate Judge

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

MARKCUS C.,
    Plaintiff,

vs.

COMMISSIONER OF
SOCIAL SECURITY,
    Defendant.

Case No. 2:22-cv-2917
Morrison, J
Litkovitz, M.J.

**NOTICE**

Pursuant to Fed. R. Civ. P. 72(b), **WITHIN 14 DAYS** after being served with a copy of the recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations.  This period may be extended further by the Court on timely motion for an extension.  Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections.  If the Report and Recommendation is based in whole or in part upon matters occurring on the record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon, or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs.  A party may respond to another party's objections **WITHIN 14 DAYS** after being served with a copy thereof.  Failure to make objections in accordance with this procedure may forfeit rights on appeal.  See *Thomas* v. *Arn*, 474 U.S. 140 (1985); *United States* v. *Walters*, 638 F.2d 947 (6th Cir. 1981).